■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v LINDA TEMPTON, Respondent. [597 NYS2d 292] —Order, Supreme Court, New York County (Emily J. Goodman, J.), entered on or about November 29, 1991, which granted the defendant's motion for suppression of certain physical and identification evidence, unanimously modified, on the law and the facts, insofar as to deny the defendant's motion to suppress the physical evidence consisting of the victim's wallet and credit cards, and otherwise affirmed; defendant's motion to dismiss the People's appeal is denied.

On March 21, 1991, Police Officer Clayton Mills was on routine foot patrol in Pennsylvania Station in Manhattan, when the victim emerged from a women's restroom shouting that someone had stolen her belongings from her handbag. Shortly thereafter the defendant and two other women emerged from the restroom; the victim immediately identified the defendant as the perpetrator. Officer Mills asked the defendant and her companions if they had any property which belonged to the victim. All three said they did not. The officer then asked the three to accompany him to the Amtrak Police Station. Prior to going to the station the officer and the victim went into the restroom and found some papers belonging to the victim. There was no one else in the restroom at that time.

At the suppression hearing Officer Mills testified that the defendant and her companions voluntarily accompanied him to the Amtrak Police Station. Defendant, however, testified

that she and her friends were told they had to go to the station. Defendant acknowledged though that she and her companions were not placed under arrest at that point, but were told that they were at the precinct as part of an investigation and would be free to go when the investigation was completed.

The victim was shown the defendant and her companions while they were seated together in a holding area at the police station and identified them a second time. According to Officer Mills, the defendant and the other individuals again denied having any of the victim's property and then voluntarily allowed themselves to be searched. Upon discovering the victim's wallet and credit cards in the defendant's bag, the officer placed the defendant under arrest. The victim's camera was discovered underneath the bench on which the defendant and her companions were sitting. Officer Mills testified that, while a video camera mounted on the wall of the station was activated at that juncture and a videotape was made of the events which followed, his search of the handbag was conducted before the camera was turned on and therefore did not appear on the videotape.

At the hearing the defendant acknowledged that she had a criminal record dating back to 1966 which included some 30 convictions, 18 of which occurred after 1980. Of the 18 convictions at least nine were for petit larceny. Defendant also acknowledged that she used at least 40 different aliases. The defendant's testimony was essentially that Officer Mills found the victim's wallet and credit cards in the trash inside the restroom and planted the evidence in her bag at the appropriate time.

Although factual findings by the hearing court are not to be lightly disregarded, plainly unjustified or clearly erroneous findings are not to be accepted (*People v Pilotti,* 127 AD2d 23, 29). While the determination of credibility issues by the trier of facts is normally accorded great weight, this " 'rule of deference must give way when the appellate court determines that the fact findings under review are against the weight of the evidence' " (*supra,* at 29, quoting *People v Lopez,* 95 AD2d 241, 252-253). This Court has the power, like the trier of fact, to " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*People v Bleakley,* 69 NY2d 490, 495, quoting *People ex rel. MacCracken v Miller,* 291 NY 55, 62).

Upon our review of the record in this case, we conclude that

the hearing court improperly discredited the testimony of Officer Mills and erroneously concluded that the defendant's bag was searched only by an officer who the People failed to identify. The fact that the tape showed only the unidentified officer searching the defendant's bag, does not impeach Officer Mills' testimony that he searched the bag, discovered the incriminating evidence, placed the defendant under arrest and then apprised his captain that he had an arrest procedure before the video camera was turned on.

Defendant's testimony, that subsequent to the search by the unidentified officer, Officer Mills turned his back to the video camera and placed the victim's wallet in her bag and then removed it in front of the camera, strains credulity. Defendant in her brief to this Court points out that "[t]he room where the purse search took place was covered by two cameras, one at each end shooting toward each other". Given that fact, the placement of the cameras would make it impossible for Mills to have turned his back so as to hide placement of the evidence in defendant's bag from the cameras. Defendant's hypothesis, on appeal, that this activity was somehow eradicated from the tape, is pure speculation.

Thus we conclude that defendant's veracity was suspect at best, and her version of the events not credible under the circumstances. The hearing court placed undue weight on what the videotape did not show and too little weight on the testimony of the police officer. We therefore conclude based on the evidence presented, that the defendant's bag was searched once by Officer Mills prior to the video camera being turned on and then again by the unidentified officer on the videotape.

The hearing court properly denied suppression of the victim's initial identification of the defendant as that identification was spontaneous and not the result of any identification procedure arranged by the police (People v Rios, 156 AD2d 397, 398, lv denied 75 NY2d 923); however, suppression of the identification made of the defendant at the police station as unduly suggestive was proper. There were no exigent circumstances and the victim viewed the defendant in a holding pen together with the individuals who were with defendant when the victim first identified her (People v Lorick, 142 AD2d 501, appeal withdrawn 73 NY2d 785). Concur—Murphy, P. J., Carro, Ellerin and Ross, JJ.