■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v STREBOR ROBERTS, Respondent. [749 NYS2d 14] —Order, Supreme Court, Bronx County (Alexander Hunter, Jr., J.), entered March 6, 2001, which granted defendant's motion to suppress statements made to police following his arrest, unanimously reversed, on the law and the facts, the motion denied and the case remanded for further proceedings.

Supreme Court granted defendant's motion to suppress written and oral statements he made to police after he was arrested and read his *Miranda* rights, on the ground that they were the fruits of an illegal arrest. The court based its decision on discrepancies between the testimony of the arresting police detective as to the time of defendant's arrest and the time recorded in the on-line booking sheet, discrepancies which the

court concluded made the detective's testimony incredible. The prosecution asserts that the discrepancies are simply the product of clerical error and should not constitute the basis for a determination that defendant's arrest was unlawful or for the suppression of defendant's statements.

On the morning of December 1, 1999, Francisca Rosario came to the 46th Precinct and reported that she had been robbed at gunpoint by two men at about 9:40 A.M. on Grand Avenue in the Bronx. Ms. Rosario described one of her assailants as a five foot, six inch Hispanic male, approximately 27 years old, whom she recognized from the neighborhood. The other assailant she described only as having dark brown skin and a bald head. She reported that one of the robbers had fled into the building at 1695 Grand Avenue following the robbery.

Two detectives and a police officer drove with Ms. Rosario in an unmarked police car to Grand Avenue to canvass the neighborhood. One of the detectives and the police officer entered the building at 1695 Grand Avenue, where they found defendant and another man known as "Bobby." The police escorted defendant and Bobby out to the waiting police car for possible identification by Ms. Rosario. However, Ms. Rosario was unable to identify either defendant or Bobby as one of her assailants. Defendant and Bobby were allowed to leave, and the detective and police officer continued to canvass the area while Ms. Rosario waited in the police car with the other detective. Shortly thereafter, Ms. Rosario spotted Edwin Rodriguez in a nearby parking lot and yelled out, "There he goes. That's him." Within minutes, uniformed police officers arrived and Rodriguez was arrested.

The detectives returned to the precinct house with Rodriguez. At around 1:45 P.M., the arresting detective read Rodriguez his *Miranda* rights and Rodriguez gave the detective a statement in which he admitted robbing and slapping Ms. Rosario. He also implicated defendant in the robbery, stating, "Next thing I know this guy Streba * * * about 19 years old who lives at 54 West 174th St. Apt. 3G, came out of 1669 Grand Ave with gun [sic] in his hand and pointed it at [Rosario]."

At the suppression hearing, the arresting detective testified that Rodriguez was arrested at 12:15 P.M.; that Rodriguez was read his *Miranda* warnings in the precinct station house at 1:45 P.M.; and that the detective took Rodriguez's statement after the *Miranda* warnings had been given. The detective further testified that he reduced Rodriguez's statement to writing as it was being given, that Rodriguez then read and signed the written statement.

According to the detective, after he obtained Rodriguez's statement implicating defendant, he left the precinct and drove to 176th Street where he found and arrested defendant Roberts, at "around, I'd say, after 2 o'clock." Following his arrest, the defendant was brought to the precinct house, where he was read his *Miranda* rights and thereafter gave oral and written statements in which he admitted his involvement in the Rosario robbery.

The defense introduced the on-line booking sheet, which had been prepared by the detective on the date of the incident and reviewed by a precinct supervisor. The booking sheet states that defendant was arrested at 1:30 P.M., not as the detective had testified, "after 2 o'clock." If the arrest time on the booking sheet was accurate, defendant's arrest would have occurred 15 minutes before Rodriguez gave the statement that the detective testified he relied upon in arresting defendant. When confronted with the discrepancies between the arrest time stated on the booking sheet and the time he testified he arrested defendant, the detective stated that the time on the booking sheet was a mistake.

Supreme Court credited the 1:30 P.M. arrest time stated on the on-line booking sheet and discredited the detective's testimony. The court rejected the detective's testimony that the time of defendant's arrest as recorded in the on-line booking sheet was a mistake, and concluded that the detective "tailored" his testimony that the arrest was premised on Rodriguez's statement and "that the actual time [of arrest] was 2 p.m.," to meet constitutional requirements. The court found the detective's so-called "tailored" testimony to be incredible, since it would have been all but impossible for the detective to read Rodriguez his *Miranda* rights, take his statement, reduce the statement to writing, obtain Rodriguez's signature, and go back onto the street to find and arrest defendant between 1:45 P.M., when the detective commenced the interview with Rodriguez, and 2:00 P.M. when, according to the court's view, defendant was arrested. Based on these factual findings, the court held that the police lacked probable cause to arrest defendant at 1:30 P.M., and that, therefore, the statements defendant made following his arrest were inadmissible fruits of the unlawful arrest under *People v De Bour* (40 NY2d 210) and *People v Hollman* (79 NY2d 181).

Although an appellate court usually accepts the factual determinations of the hearing court and defers to its resolution of the credibility of the testimony before it, we have rejected such factual determinations when they lack an evidentiary

basis in the record (*see e.g. People v Polanco*, 292 AD2d 29) or when the hearing court has placed undue weight on some evidence and too little weight on contrary evidence (*see e.g. People v Tempton*, 192 AD2d 369, 371, *lv denied* 82 NY2d 760). We find that Supreme Court's factual findings and wholesale rejection of the detective's testimony are not supported by the record in this case.

As an initial matter, it should be noted that the detective testified that he arrested defendant "after 2 o'clock," not at 2:00 P.M. as found by Supreme Court. In addition, the detective's testimony provides the only reasonable explanation of how defendant came to be arrested. Before the detective obtained Rodriguez's statement, he had no reason to believe that defendant was implicated—indeed, prior to the Rodriguez statement, he only had reason to believe that defendant was *not involved*, as the complainant was unable to identify defendant in a face-to-face encounter earlier in the day. Furthermore, as the prosecution points out, if the detective was intent on arresting defendant prior to taking Rodriguez's statement, he would have found a way to do so when he first found him in the building at 1695 Grand Avenue. Finally, while Supreme Court found the time frame suggested by the detective's testimony to be impossible and therefore incredible, the time frame posited by a 1:30 P.M. arrest—as stated on the on-line booking sheet and as credited by the court—is even more problematic. In that scenario, the detective, having arrested Rodriguez at 12:15 P.M., would have had to have delivered him to the station house to wait while he returned to the street to find and arrest defendant by 1:30, without any basis for doing so, in the hope that something might materialize that would provide a justification for the arrest, and then, 15 minutes after defendant's arrest, obtain a statement from Rodriguez, which, conveniently, provided the necessary justification by implicating defendant. The detective's testimony that the time recorded in the on-line booking sheet was a mistake was uncontradicted and unimpeached. The defense offered no evidence to dispute the detective's testimony that he arrested defendant sometime "after 2 o'clock," or that the booking sheet information was mistaken. We believe the principle that the simplest explanation is most often the correct one applies here. The simplest explanation in this case is that the detective made a mistake when he completed the on-line booking sheet and that his supervisor did not catch the error. Such mistakes are certainly not in the realm of the incredible as Supreme Court appeared to believe. Concur—Andrias, J.P., Buckley, Rosenberger, Wallach and Gonzalez, JJ.