■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v PETER BUTLER, Respondent. [813 NYS2d 366]—

Order, Supreme Court, New York County (William A. Wetzel, J.), entered on or about May 17, 2004, which granted defendant's motion to suppress physical evidence, and order, same court and Justice, entered on or about June 7, 2004, which, to the extent appealable, dismissed the indictment, unanimously reversed, on the law and the facts, the motion to suppress denied, the indictment reinstated and the matter remanded for further proceedings.

At defendant's *Mapp* hearing, Police Officers Shaughnessy and Scala testified that on May 24, 2003, at approximately 9:30 P.M., they were on anticrime patrol in the Chelsea area. The officers were experienced, had received special training in narcotics investigations, and had made significant numbers of narcotics arrests, including some in the Chelsea area. They were in plain clothes in an unmarked car driving east on 24th Street approaching Eighth Avenue. On the north side of the street, they passed a large man, six feet tall, 300 pounds, of "Samoan" appearance, who seemed to be acting as a "lookout," peering into parked cars and at pedestrians. Suspicious, the officers circled

the block, and Shaughnessy exited the car and positioned himself on the south side of the street to observe the "Samoan." Scala continued down the block and parked the car out of sight. Minutes later, Shaughnessy observed a maroon Maxima park at a hydrant located just east of the "Samoan." Defendant exited the passenger side and approached the "Samoan." The two talked briefly, then walked together along a "well-lit" footpath toward a housing development. Shaughnessy crossed the street and followed. He testified that he observed the "Samoan" remove folded currency from his pocket, count it, and hand it to defendant. He then observed defendant remove from his right front pants pocket a glassine bag containing a white substance which defendant handed to the "Samoan." Defendant placed the currency in his left front pants pocket. The two men returned to the Maxima, which defendant entered on the passenger side, and the "Samoan" continued walking east to Eighth Avenue, where he turned and walked north.

The Maxima pulled away from the hydrant and headed east on 24th Street. Shaughnessy radioed Scala that he had observed an apparent drug sale. He then joined Scala, and they followed the Maxima across 24th Street with the intention of stopping it. A license plate check produced no negative information. At Sixth Avenue and 29th Street, they pulled the Maxima over; approximately six minutes had elapsed since the drug transaction.

Scala testified that he approached the passenger side, identified himself, requested that defendant exit the car, and led him to the rear of the car where he patted him down and handcuffed him. Scala then searched defendant and found a bag of cocaine in each of defendant's front pants pockets, and $4,300 in cash, folded in separate "knots," in various pants pockets. Scala further testified that during the initial frisk, he had felt "a large rocky substance" in defendant's upper buttocks. So he proceeded to unfasten defendant's belt, pants button and zipper, pull defendant's pants and underwear about three inches below his waist, and extract a large glassine bag containing a rock of cocaine from his upper buttocks. Scala testified that the bag was "sitting right on top," not within the "cheeks" of defendant's buttocks, was not near the rectum, and that the bag had no feces or lubricant on it. Shaughnessy and Scala both testified that neither defendant's buttocks nor genital area were exposed to public view, because his pants were dropped only slightly and he was wearing a long, untucked T-shirt, and that, in any event, there were few pedestrians in the area.

Defendant's testimony largely corroborated that of the officers. He admitted that he was a drug dealer who, at times, sold

"thousands of dollars worth of drugs," that on the day of the arrest he had secreted the cocaine that the officers subsequently found in his pockets and buttocks, and that he was carrying over $4,000 in cash at that time. However, he testified that when Blanco, the driver-owner of the Maxima, drove him down to 24th Street and Eighth Avenue that evening, he conducted a drug transaction in apartment 14G of a building there, but did not conduct any transaction outside of the building, as Officer Shaughnessy alleged. He also testified that in retrieving the drugs from his buttocks, the officer pulled his pants halfway down his buttocks and pubic hair, separated his buttocks "cheeks" with his fingers, and extracted the bag of cocaine.

The hearing court, in concluding that all evidence recovered from defendant be suppressed, based its conclusions on its own experience of adjudicating numerous drug suppression motions, as well as the witnesses' demeanor. It found the police officers' testimony to be contrary "to the fundamental realities of the drug trade in significant respects," incredible, and fabricated after the fact in order to establish probable cause for the car stop. It found defendant's testimony credible and consistent with its own experience. Specifically, it found that defendant was a higher echelon drug seller who would not drive around looking for buyers or conduct a street sale in the open; that if he did conduct a street sale, it would have been prearranged, which did not seem to fit the scenario the officers described; and that it was unlikely that the officers would not attempt to apprehend the buyer. The court concluded that a more likely scenario was that Officer Shaughnessy's curiosity was aroused by the "Samoan's" conduct as they initially drove past; he exited the car and began to observe the "Samoan" from the opposite side of the street; the Maxima arrived, defendant exited it and went into the building to make the drug transaction, as he described; he and Blanco departed shortly (10 to 15 minutes) after they arrived; and when the officers followed the Maxima, and the license plate check came back clean, and no traffic infraction occurred after several blocks, they stopped the car on a hunch and recovered the drugs. With regard to the recovery of cocaine from defendant's buttocks, the court found that Officer Scala's testimony contained numerous inconsistencies and lacked credibility; the court credited defendant's testimony and found that the pat-down of his buttocks revealed nothing, that Scala pulled down defendant's pants and underwear such that half of his buttocks and pubic hair were exposed, that the bag of cocaine was retrieved from the area of defendant's anus, that since defendant was handcuffed and under the officers' control, there was no danger of him disposing of the cocaine, and thus, no

exigent circumstances; therefore, the strip search was impermissible.

We acknowledge our duty, generally, to defer to a hearing court's fact-findings (*People v Prochilo*, 41 NY2d 759, 761 [1977]; *People v Sanchez*, 248 AD2d 306 [1998], *lv denied* 92 NY2d 930 [1998]), and to substitute our own findings on credibility only when the hearing court's findings are unjustified or clearly erroneous (*see People v Corbin*, 201 AD2d 359 [1994]; *People v Tempton*, 192 AD2d 369, 370 [1993], *lv denied* 82 NY2d 760 [1993]). However, "we have not hesitated to reject [the] factual findings [of a hearing court] when they lack an evidentiary basis in the record" (*People v Aponte*, 124 AD2d 489, 492 [1986]; *see e.g. People v Roberts*, 298 AD2d 295 [2002] [overturning hearing court's factual finding that officer's testimony was tailored to meet constitutional requirements as unsupported by the record]; *People v Polanco*, 292 AD2d 29 [2002] [reversing determination crediting defendant's testimony and finding officer incredible]; *People v Darby*, 263 AD2d 112 [2000] [hearing court had no valid basis for rejection of officer's testimony that PCP had a distinctive odor], *lv denied* 95 NY2d 795 [2000]).

Here, we find the hearing court's evaluation of the police officers' testimony to be unsupported by the record and based upon speculation. The officers' account of the sequence of events was straightforward and credible. The court rejected it as implausible, inconsistent and tailored to meet constitutional requirements, only because it did not comport with the court's knowledge and experience regarding illegal narcotics transactions. The court's opinion that the drug transaction did not comport with the "fundamental realities of the drug trade" colored its view of the officers' credibility as well. The court cited no basis in the record for rejecting the officers' testimony and imposing its own assumptions and interpretation on the events at issue. The court totally discounts, for example, the possibility of delivery service to the "Samoan" on the street (*see e.g. People v Brown*, 304 AD2d 321 [2003], *lv denied* 100 NY2d 536 [2003]; *People v Harris*, 190 AD2d 1043 [1993], *lv denied* 81 NY2d 971 [1993]; *People v Diaz*, 141 AD2d 832 [1988], *lv denied* 72 NY2d 1044 [1988]; *People v Cuevas*, 167 Misc 2d 738 [1995]).

By way of contrast, the record shows that the court ignored or downplayed defendant's obvious motivation to tailor his testimony, his substantial criminal record, and the evasiveness that preceded his "admission" that he went to an apartment for the purpose of conducting a drug sale.

In any event, Officer Shaughnessy's observation of defendant's drug transaction with the "Samoan" provided probable

cause to arrest defendant for a drug sale (*see People v Jones*, 90 NY2d 835, 837 [1997]; *People v Hardy*, 275 AD2d 656 [2000], *lv denied* 96 NY2d 735 [2001]). Hence, the car stop was proper, the pat-down incident to the car stop, with the consequent seizure of significant quantities of drugs and drug money from defendant's pockets, was proper (*see People v Evans*, 43 NY2d 160 [1977]; *People v Williams*, 273 AD2d 79 [2000], *lv denied* 95 NY2d 940 [2000]), and the seizure of the cocaine secreted in defendant's buttocks, revealed by the pat-down, was proper (*see People v Weintraub*, 35 NY2d 351 [1974]). In the latter regard, we do not find that a strip search occurred, given the circumstances described. By either the officers' or defendant's account, his pants and underwear were loosened and lowered for a brief time and to a minimal degree in order to retrieve the glassine bag of cocaine, which mainly sat atop defendant's buttocks; at most, it was only partly wedged in between. Defendant was neither disrobed nor were his genitals exposed. The officer who conducted the search was not wearing gloves, and other evidence proves that, at the time, defendant was wearing a thigh-length T-shirt. This is readily distinguishable from the search conducted in *People v Mitchell* (2 AD3d 145, 148 [2003] [search of arrested suspect deemed improper where, absent compelling circumstances, police pulled his pants completely down on a public street during daylight hours and searched his fully exposed buttocks with gloved hands]).

Thus, inasmuch as we find the hearing court's findings of fact unjustified by the record, and find the officers' testimony reliable and credible, we conclude that none of the physical evidence at issue here should be suppressed. Concur—Andrias, J.P., Sullivan, Williams, Gonzalez and Catterson, JJ.