*William Samuel Blake v. State of Maryland*, Misc. No. 2, September Term, 2022, Opinion by Booth, J.

**CRIMINAL LAW — INEFFECTIVE ASSISTANCE OF COUNSEL — STATE'S OBLIGATION TO PROVIDE IMPEACHMENT EVIDENCE**

Pursuant to Maryland Rule 8-304, the Supreme Court of Maryland issued a writ of *certiorari* accepting two certified questions from the Appellate Court of Maryland, which it slightly rephrased as follows:

1. Did the post-conviction court err by ruling that trial counsel had not rendered ineffective assistance by failing to move to compel production of the Internal Affairs Division files and other potential impeachment evidence regarding a State's witness prior to a pre-trial suppression hearing?

2. In the alternative, did the post-conviction court err by ruling that the State had not violated its *Brady* obligations by failing to disclose impeachment evidence regarding a State's witness?

The Court answered no to questions 1 and 2. In answering question 1, the Court held that Mr. Blake failed to prove that his trial counsel rendered ineffective assistance by failing to move to compel production of Officer Fabien Laronde's Internal Affairs Division ("IAD") files. Undertaking the analysis required under *Strickland v. Washington*, 466 U.S. 668 (1984), the Court concluded that Mr. Blake failed to satisfy his burden of demonstrating that his trial counsel's failure to move to compel production of Officer Laronde's IAD files fell below an objective standard of reasonableness and that his performance was therefore deficient. Moreover, even if Mr. Blake had established that his trial counsel's performance was deficient, he failed to demonstrate that the failure to move to compel the disclosure of these files prejudiced him. In other words, assuming trial counsel erred in failing to move to compel the disclosure of the IAD files, Mr. Blake failed to show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different.

Concerning question 2, given that the same legal standard applies to a *Strickland* prejudice analysis and the materiality standard to establish a *Brady* violation, the Court assumed, without deciding, that the State was required to disclose impeachment evidence prior to the suppression hearing. On that basis, the Court determined that Mr. Blake failed to satisfy the *Brady* materiality standard for the same reasons that he failed to establish prejudice under *Strickland.*

The Court affirmed the judgment of the circuit court.

IN THE SUPREME COURT

OF MARYLAND*

Misc. No. 2

September Term, 2022

WILLIAM SAMUEL BLAKE

v.

STATE OF MARYLAND

Fader, C.J.,
Watts,
Hotten,
Booth,
Biran,
Gould,
Eaves,

JJ.

Opinion by Booth, J.

Filed: August 29, 2023

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

# I

## Introduction

William S. Blake[1] was arrested by Baltimore City Police Officer Fabien Laronde[2] on July 12, 2012, for distribution of heroin. Mr. Blake was searched incident to his arrest, and a bag containing 3.5 grams of heroin was found in his underwear. Shortly thereafter, Mr. Blake was indicted for distribution of heroin and related lesser charges by a Baltimore City grand jury.

Mr. Blake, by counsel, filed a motion to suppress the heroin found on his person. He contended that the recovery of the drugs was the result of an illegal strip search. A hearing was held at which Officer Laronde was the only witness. The court denied Mr. Blake's motion to suppress.

On October 17, 2013, Mr. Blake entered a plea of not guilty upon an agreed statement of facts, to one count of distribution of heroin, with the understanding that he would be found guilty by the court. The circuit court sentenced Mr. Blake to eight years' incarceration. Mr. Blake noted a timely appeal, and the Appellate Court of Maryland[3] affirmed the circuit court's judgment in an unreported opinion. *Blake v. State*, No. 1804,

---

[1] William Samuel Blake is also known as James Blake.

[2] Fabien Laronde was fired by the Baltimore City Police Department in 2016. Because he was a police officer at the time of Mr. Blake's search, we refer to him as "Officer Laronde."

[3] At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

Sept. Term 2014 (unreported) (Md. Ct. Spec. App., Sept. 4, 2014), *cert. denied* 441 Md. 62 (2014).

Mr. Blake filed a *pro se* petition for post-conviction relief in July 2015. Thereafter, he filed supplemental petitions through counsel. A post-conviction hearing was held in September 2020. The post-conviction court issued an opinion and order in October 2020 granting Mr. Blake the right to file a belated motion for modification of sentence and denying all other relief.

On November 30, 2020, Mr. Blake filed an application for leave to appeal the order denying his petition for post-conviction relief. Thereafter, the Appellate Court of Maryland issued an order granting the application. After the parties submitted their briefs, the Appellate Court of Maryland certified the following questions of law to this Court pursuant to Maryland Rule 8-304, which we have slightly rephrased as follows:[4]

1. Did the post-conviction court err by ruling that trial counsel had not rendered ineffective assistance by failing to move to compel production of the Internal Affairs Division files and other potential impeachment evidence regarding a State's witness prior to a pre-trial suppression hearing?

2. In the alternative, did the post-conviction court err by ruling that the State had not violated its *Brady* obligations by failing to disclose impeachment evidence regarding a State's witness?

We accepted the certification pursuant to Maryland Rule 8-304(c)(3) and issued a writ of *certiorari* that included the entire action.

---

[4] Question 1 in the Certification reads as follows:

Did the post-conviction court err by holding that trial counsel had not rendered ineffective assistance by failing to move to compel discoverable impeachment evidence regarding a State's witness [Officer Laronde]?

2

For the reasons set forth in this opinion, we answer no to questions 1 and 2. We hold that Mr. Blake failed to prove that his trial counsel rendered ineffective assistance by failing to move to compel production of the Internal Affairs Division ("IAD") files. Based upon our independent appraisal of the record and undertaking the analysis required under *Strickland v. Washington*, 466 U.S. 668 (1984),[5] we conclude that Mr. Blake failed to meet his burden of demonstrating that his trial counsel's failure to move to compel production of Officer Laronde's IAD files fell below an objective standard of reasonableness and that his performance was therefore deficient. Additionally, even if Mr. Blake had established that his trial counsel's performance was deficient, he failed to demonstrate that the failure to move to compel the disclosure of these files prejudiced him. In other words, assuming trial counsel erred in failing to move to compel the disclosure of the IAD files, Mr. Blake failed to show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different.

Concerning our holding on question 2, given that the same legal standard applies to the prejudice prong when analyzing an ineffective assistance claim under *Strickland* and the materiality standard necessary to establish a *Brady* violation,[6] we assume, without

---

[5] As we discuss more fully herein, under *Strickland*, a criminal defendant may receive a new trial based on an allegation of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668 (1984). In a typical case involving such a challenge, the defendant is required to demonstrate both that counsel's performance was deficient and that such performance prejudiced the defense. *Id.* at 687.

[6] In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that as part of the Constitution's "fair trial" guarantee, a defendant has the right to receive exculpatory impeachment material from prosecutors. A *Brady* violation is a constitutional claim based on the Due Process Clauses of the Fifth and Fourteenth Amendments referring to the

3

deciding, that the State was required to disclose impeachment evidence prior to the suppression hearing and determine that Mr. Blake failed to establish the *Brady* materiality standard for the same reasons that he failed to establish prejudice under *Strickland.* We affirm the judgment of the circuit court.

## II

## Facts and Procedural Background

After entering a plea of not guilty upon an agreed statement of facts, Mr. Blake, through counsel, filed a motion to suppress the heroin found on his person. He contended that the recovery of the drugs was the result of an illegal strip search. Mr. Blake's attorney conceded that Officer Laronde had probable cause to arrest Mr. Blake. Therefore, according to defense counsel, the sole issue to be resolved was whether the search was reasonable under the Fourth Amendment in light of the place and manner of the search. Specifically, defense counsel argued that the search was unreasonable because it was conducted in public even though there were no exigent circumstances justifying an immediate search. The suppression hearing occurred on October 16, 2013. Officer Laronde was the sole witness at the suppression hearing. The relevant facts elicited at the hearing are not in dispute.

---

State's failure to disclose evidence in a criminal trial where: (1) the evidence at issue is favorable to the accused; (2) the evidence at issue was suppressed by the State, either willfully or inadvertently; and (3) prejudice ensued as a result of the suppression. *Yearby v. State*, 414 Md. 708, 717–19 (2010).

## A.    *The Suppression Hearing*

Officer Laronde, at that time a twelve-year veteran of the Baltimore City Police Department, testified that he had extensive training and experience as a narcotics officer. Without objection, the motions judge allowed the officer to testify as an expert in the "identification, packaging, and distribution" of controlled dangerous substances.

Officer Laronde testified that around noon on July 25, 2012, he was on foot and in uniform in a covert location. He observed a vehicle driven by Tavon Wilson pull in front of 5107 Williston Avenue in Baltimore City. Mr. Blake was a front seat passenger in the vehicle. Officer Laronde was familiar with both Mr. Blake and Mr. Wilson as individuals who previously sold narcotics in that area.

Officer Laronde observed Mr. Blake enter an apartment building and exit after approximately two minutes with a plastic bag of suspected narcotics. Mr. Blake reentered Mr. Wilson's vehicle, and, about five minutes later, a blue Saturn pulled up behind Mr. Wilson's vehicle. The Saturn was occupied by a man and a woman. Mr. Blake got out of Mr. Wilson's vehicle and went to the passenger side of the Saturn where he spoke to the female passenger. Officer Laronde observed Mr. Blake hand the woman "small objects" in exchange for currency before returning to Mr. Wilson's vehicle.

At that point, Officer Laronde, based on his training and experience, believed that he had just witnessed a narcotics transaction. Officer Laronde radioed his "arrest team" and provided descriptions of both vehicles. He instructed the officers to pull their car in front of Mr. Wilson's vehicle. When they did so, Officer Laronde left his covert location

5

and approached Mr. Wilson's vehicle on foot. He asked Mr. Wilson for his keys, and Mr. Wilson complied.

Meanwhile, Officer Smith,[7] another member of the arrest team, left to pursue the Saturn, which had driven away. Officer Smith stopped the Saturn and recovered from the waistband of the female passenger four gel caps of suspected heroin and a Ziploc bag of suspected cocaine. Officer Smith promptly radioed Officer Laronde and told him that he had found the gel caps of suspected heroin on the female passenger. Officer Laronde directed Officer Smith to seize the drugs.

Once the drugs had been seized from the female, Mr. Blake and Mr. Wilson were handcuffed and arrested. Officer Laronde put Mr. Blake in handcuffs while Officer Benjamin Critzer did the same to Mr. Wilson. Officer Laronde conducted a pat down search of Mr. Blake. While Officer Laronde stood by, Officer Critzer searched Mr. Wilson's vehicle. No drugs were recovered as a result of the search. At that point, Officer Laronde decided to search Mr. Blake's person more carefully. Officer Laronde testified that he made the decision to conduct a more thorough search because no drugs were found in Mr. Wilson's vehicle, and no drugs were recovered during the pat down. From his training and experience, Officer Laronde knew that "people selling narcotics on the street . . . will attempt to hide drugs on them in all kinds of different places[,]" including under their testicles. With that in mind, Officer Laronde positioned himself next to the opened driver's door of Mr. Wilson's vehicle. The windows of Mr. Wilson's vehicle were

---

[7] The record does not reveal Officer Smith's first name.

"illegally tinted" a dark color. He placed Mr. Blake between the driver's door and himself, creating a "triangle" for safety and privacy purposes. He testified that no one was out on the street when he began the search. With Mr. Blake facing him, Officer Laronde pulled Mr. Blake's waistband toward him and looked down the front of his pants but did not see anything. Seeing nothing, Officer Laronde asked Mr. Blake to turn around, and when he did, he noticed Mr. Blake move unnaturally, as if he had something "between his butt cheeks" or legs. Officer Laronde pulled the back of Mr. Blake's pants out to see if he could see anything in Mr. Blake's pants, and when he could not see anything, Officer Laronde asked Mr. Blake to squat down. When Mr. Blake squatted, "a large plastic bag fell into his underwear." Officer Laronde recovered the bag and placed it in a separate evidence bag. The bag that dropped into Mr. Blake's underpants was later tested and found to contain forty-one gel caps and 3.5 grams of raw heroin.

Officer Laronde testified that when he recovered the bag, he "made every attempt not to touch [Mr. Blake]." He denied: (1) putting his hand down Mr. Blake's pants before the bag fell into his underwear; (2) that at any point he had touched Mr. Blake's "anus, or his butt cheeks, or anything like that[;]" or (3) that he "manipulate[d] [Mr. Blake's] genitals." Officer Laronde said that at no point did he pull Mr. Blake's "pants down below [Mr. Blake's] waist," explaining that when he asked Mr. Blake to turn around, Officer Laronde "still held [Mr. Blake's] pants so they wouldn't fall." He insisted that Mr. Blake's genitals and buttocks were never exposed.

During his testimony, Officer Laronde explained why he positioned Mr. Blake in the above-described manner during the search: first, to prevent Mr. Blake from running;

7

and second, to shield Mr. Blake from public view during the search. At the point when Mr. Blake was searched, according to Officer Laronde, no one else was around except for himself, Mr. Wilson, and Officer Critzer, who was "six [or] seven feet" in front of Officer Laronde.

There were, however, apartment buildings on both sides of the street where Mr. Wilson's car was parked. Officer Laronde said that "[b]etween me blocking him and the concealment of the door in the vehicle, I knew that no one could see what I was doing . . . in [the center of the triangle]." He also testified that the windows of Mr. Wilson's car were illegally tinted and therefore, very dark.

On cross-examination, Mr. Blake's trial counsel attempted to create doubt concerning the reasonableness of the search in light of the place and manner of the search. To that end, trial counsel pointed out that Officer Laronde never mentioned tinted windows in the statement of probable cause, which he had authored. Trial counsel attempted to raise doubt as to whether Officer Laronde actually observed Mr. Blake sell narcotics to the female passenger of the Saturn based upon the fact that the woman was never arrested or charged with possession of narcotics. Defense counsel also attempted to suggest that the "triangle" shape formed by the car, the door, and Officer Laronde did not block the search from view as well as Officer Laronde suggested, noting that the search took place on the street "in broad daylight."

After Officer Laronde testified, Mr. Blake was advised of his right to testify and that his testimony would not be used against him in any subsequent related trial unless he

8

perjured himself. Mr. Blake affirmed he understood but ultimately declined his right to testify.

The State and Mr. Blake's trial counsel presented competing legal arguments to the motions judge concerning the reasonableness of the search. Mr. Blake's trial counsel argued that it was an impermissible visual body cavity search, a strip search similar to the search that this Court found to be unconstitutional in *Paulino v. State*, 399 Md. 341 (2007).[8] According to the defense, under *Paulino*, the search of Mr. Blake was unreasonable because it was conducted in public even though there were no exigent circumstances justifying an immediate search. The State argued that the search was a permissible "reach-

---

[8] "The United States Supreme Court has not addressed the reasonableness of a strip search incident to an arrest." *Allen v. State*, 197 Md. App. 308, 320 (2011) (citations omitted). The Supreme Court has, however, addressed the reasonableness of a strip search in connection with pre-trial detention. *See Bell v. Wolfish*, 441 U.S. 520, 559 (1979). In *Bell*, the Court set forth the following factors to determine whether a strip search in connection with pre-trial detention is reasonable: (1) the scope of the intrusion; (2) the manner in which the search was conducted; (3) the justification for initiating the search; and (4) the place in which the search was conducted. *Id.* at 559. The *Bell* factors balance "the need for a particular search against the invasion of personal rights that the search entails." *Id.*

In *Paulino v. State*, 399 Md. 341 (2007), this Court held that a visual body cavity search was unreasonable when conducted in a well-lit public car wash. During the search at issue, Mr. Paulino was placed on the ground, his pants "were pretty much . . . below his butt," *id.* at 346, and one of the detectives put on gloves "and manipulated his buttocks to allow for a better view of his anal cavity." *Id.* at 353. The Court held that the search was both a strip search and a visual body cavity search, and there was no evidence that Mr. Paulino's privacy was protected in any way. *Id.* at 359–60. The Court held that exigent circumstances are required before such an invasive search in a public place is reasonable. *Id.* at 359–61.

9

in" search and was conducted in a manner similar to the search that was upheld in *Allen v. State*, 197 Md. App. 308 (2011).[9]

The motions judge ruled in favor of the State, concluding that Mr. Blake's right to privacy was not abridged because the search was performed in a manner that avoided any unnecessary embarrassment to Mr. Blake. The motions judge determined that, under the particular facts and circumstances of the case, the search was reasonable.

### B.    The State's Motion in Limine

After the court ruled on the motion to suppress, the State made a motion *in limine* to exclude trial counsel from "asking Officer Laronde any questions regarding" a civil judgment against Officer Laronde for false imprisonment, which the State had disclosed in

---

[9] In *Allen v. State*, 197 Md. App. 308 (2011), the Appellate Court determined that the search incident to an arrest was not a strip search or a visual body cavity search like the one described in *Paulino*, but was, instead, a "reach-in search[,]" which is defined as a search that "involves a manipulation of the arrestee's clothes such that the police are able to reach in and retrieve the contraband without exposing the arrestee's private areas." *Allen*, 197 Md. App. at 321 (quoting *Paulino*, 399 Md. at 360 n.6). In *Allen*, the Appellate Court held that, although a "reach-in" search is less invasive, it still "permits the officer to view a suspect's private areas, [and] is not the type of search that automatically is allowed as a search incident to an arrest." *Id.* at 323. The Appellate Court held that the Supreme Court's *Bell* factors apply. *Id.* Applying those factors, the Appellate Court determined that the reach-in search was reasonable under the circumstances. *Id.* The court noted that "the police officers merely pulled the [defendants'] pants and underwear away from their waist, at which point the police observed a plastic bag protruding from the [defendants'] buttocks." *Id.* at 324. The Appellate Court observed that the defendants' "clothing was not removed, and the private areas of their bodies were not publicly exposed. The officers took steps to protect the [defendants'] privacy." *Id.* The court further noted that the "officer stood directly behind the [defendant], and he was the only one who could see the [defendants'] buttocks during the search." *Id.* at 324–25. Moreover, even though the search occurred in a public area, "there were 'no civilians in the area.'" *Id.* at 325. The Appellate Court determined that "[a]fter balancing the four factors set forth in *Bell*, [] the searches in this case were reasonable under the Fourth Amendment." *Id.* at 327.

discovery. Defense counsel objected, arguing that the false imprisonment judgment was "an issue of credibility," but the court granted the State's motion.

### C.     Mr. Blake's Plea of Not Guilty Upon an Agreed Statement of Facts

The following morning, the parties informed the court that they had agreed to proceed by way of a not guilty plea upon an agreed statement of facts for the purpose of preserving the appealability of the court's ruling on the suppression motion.[10]  The State recommended a sentence of eight years for the count of distribution of heroin.  Mr. Blake indicated that he understood that he would be found guilty.  The following agreed statement of facts was read into the record:

> On July 25th, 2012, at approximately [11:45] hours in the area of Coventry and Williston (phonetic spelling) officers observed the Defendant James Blake, who is presently seated at defense table with defense counsel, and an individual by the name of Tavon Wilson pull into the block in front of 5107 Williston.  Once parked, passenger Blake exited and entered into the apartment building.  Once he emerged he was holding a plastic bag of suspected [controlled dangerous substances] and entered Wilson's car.

---

[10] In *Bishop v. State*, 417 Md. 1, 20 (2010), this Court discussed the difference between a not guilty agreed statement of facts and a stipulation to facts:

> Amidst the spectrum between not guilty pleas and guilty pleas, there exists the hybrid plea, one in which an individual retains the right to appellate review of evidence subject to a suppression motion but avoids going through the time and expense of a full trial.  By pleading not guilty and agreeing to the proffer of stipulated evidence or an agreed statement of facts, an individual, like with a guilty plea, waives a jury trial and the right to confront witnesses but retains appellate review of the suppression decision.

In the instant case, the parties submitted an agreed statement of facts.  The transcript reflects that, at the time the plea was entered and the statement of facts was submitted, there was no dispute over the ultimate facts of the case, and Mr. Blake understood that he would be found guilty.  The parties do not dispute this characterization.

11

Both Wilson and Blake waited in the car for several minutes until a Saturn parked behind them. Once parked, Blake exited the car and approached the passenger of the Saturn. Blake handed, engaged in a conversation with the buyer Lonna White (phonetic spelling), and handed her suspected [controlled dangerous substances] in exchange for U.S. currency. The Saturn pulled off and was later stopped by police officers. Officers approached White and asked her if she had any drugs on her person, she advised that she did and removed four gel caps of suspected heroin and a ziplock of suspected cocaine. Blake and Wilson were placed under arrest.

The car was searched, no drugs were found. Blake was never seen tossing any items by the police officers. A search incident to arrest was then conducted on Blake. Officers shielded Blake between the car and the door to the car forming a triangle of sorts. There were no other individuals on the street. Officers pulled the waistband area of Blake's pants away from the front of him and peered into his pants checking for contraband. Officers then asked Blake to turn around so that the same could be done to his rear side. When turning around Blake moved unnaturally, leading officers to believe that he was concealing the contraband somewhere in his rear. Officers asked Blake to squat and when he did so a plastic bag fell into his underwear.

The bag contained 41 gel caps of heroin identical to what was recovered from White, the buyer. The bag also contained approximately 3.5 grams of suspected raw heroin. Prior to the bag falling into Blake's underwear, officers did not reach into Blake's underwear. At no time did officers touch Blake's genitals or anus. Also recovered was $28 from Blake.

The State moved to admit as evidence a copy of the report showing that the controlled dangerous substance recovered was heroin. Trial counsel submitted on the agreement, and the court found Mr. Blake guilty of distribution of heroin and sentenced him to eight years' imprisonment.

## D. Mr. Blake's Direct Appeal

On October 22, 2013, Mr. Blake filed a notice of appeal, and the Appellate Court of Maryland affirmed his conviction in an unreported opinion. The Appellate Court applied the reasonableness factors the United States Supreme Court articulated in *Bell v. Wolfish*,

12

441 U.S. 520, 559 (1979), addressing the reasonableness of a strip search in connection with pre-trial detention, and concluding that the particular facts and circumstances of the search were "closely analogous" to the search in *Allen v. State* and were distinguishable from the search in *Paulino v. State.* Accordingly, the court determined that the search of Mr. Blake incident to his arrest was reasonable.

## E. Mr. Blake's Petition for Post-Conviction Relief

On July 20, 2015, Mr. Blake filed a *pro se* petition for post-conviction relief in the Circuit Court for Baltimore City. On October 9, 2019, and September 23, 2020, he filed supplemental petitions through counsel. On September 25, 2020, a post-conviction hearing was held, at which Mr. Blake raised several allegations of error. Relevant to the questions before us, Mr. Blake alleged that: (1) his trial counsel rendered ineffective assistance of counsel for failing to demand the pre-trial disclosure of Officer Laronde's IAD files; and (2) he was denied due process of law because the State withheld favorable material impeachment information related to Officer Laronde in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

### 1. The Post-Conviction Hearing

At the post-conviction hearing, Mr. Blake entered into evidence, under seal, IAD files and other documents containing ten allegations of misconduct involving Officer Laronde spanning from 2001 until October 16, 2013—the day he was called as a witness at Mr. Blake's suppression hearing. Mr. Blake was granted access to the documents as a result of a judicial ruling in February 2019. Mr. Blake argued that the allegations in the files were relevant to Officer Laronde's credibility and his alleged propensity for

13

conducting strip searches and planting narcotics to justify arrests. Nine of the allegations were in the form of complaints made to the IAD of the Baltimore Police Department.[11] The general nature of the complaints and the disposition of each complaint in chronological order, are described below:

1. September 2006: Complaint alleging neglect of duty based upon a failure to adequately supervise another officer.
   Disposition: Sustained.

2. May 2008: Complaint alleging assault and planting of evidence.
   Disposition: The file was administratively closed after no complainant contact.[12]

3. August 2008: Complaint alleging planting of evidence.
   Disposition: The file was administratively closed after no complainant contact.

4. September 2009: Complaint alleging planting of evidence.
   Disposition: The file was closed as unfounded.

5. August 2010: Complaint alleging theft.
   Disposition: The file was administratively closed after no complainant contact.

6. March 2011: Complaint alleging: (1) planting of evidence and theft; and (2) neglect of duty for failure to follow proper procedure for submission of evidence.
   Disposition: (1) The planting evidence and theft charges were found "not sustained." (2) The neglect of duty charge based upon failure to follow procedure for submission of evidence was sustained.

7. July 2011: Complaint alleging planting of evidence and theft.
   Disposition: The file was administratively closed after no complainant contact.

---

[11] For ease of discussion, we collectively refer to all of the misconduct allegations as the "IAD files."

[12] The complainant later sued Officer Laronde and other officers in the United States District Court for the District of Maryland alleging battery, false imprisonment, malicious prosecution, and related claims. The suit was settled in 2012 for $155,000. In discovery, the State disclosed the civil judgment that had been entered against Officer Laronde for false imprisonment, which was the subject of the State's motion in *limine* described in part II.B. of this opinion. The motions judge granted the State's motion. As part of his direct appeal, Mr. Blake did not appeal that ruling.

14

8. October 2011: Complaint alleging planting of evidence and assault.
   Disposition: The file was administratively closed after no complainant contact.

9. December 2011: Complaint alleging theft.
   Disposition: Not sustained.

In addition to the conduct documented in the IAD files, Mr. Blake introduced into evidence a Final Report of the Baltimore City Police Department regarding a nonfatal police-involved shooting that occurred in January 2013 (the "Final Report"). The Final Report includes a description of the agency's interview with Officer Laronde, who was a witness to the shooting. The victim of that shooting filed a lawsuit against the Baltimore City Police Department. Mr. Blake also included an article from *The Guardian* newspaper dated January 16, 2016, which reported that the victim's defense attorney had obtained video surveillance of the shooting that contradicted Officer Laronde's statement about the incident. A year later, in 2017, the lawsuit was settled for $400,000.

In addition to the misconduct allegations entered into evidence, Mr. Blake's trial counsel testified. Trial counsel stated that the State had not disclosed any exculpatory evidence or impeachment evidence related to Officer Laronde before Mr. Blake's trial date, except for a summary of the City's settlement of the false imprisonment lawsuit against Officer Laronde. Counsel acknowledged that, at the time of Mr. Blake's trial, he had "heard allegations about Officer Laronde's inappropriate strip searching of civilians on the street[,]" but testified that he was not aware of any lawsuits or settlements in which plaintiffs had made such a claim. He testified that if he had had information about a lawsuit against Officer Laronde pertaining to an illegal strip search, he would have "attempted to

15

use that information at the [suppression hearing] and buttress [the] argument that [he] was making, and also, [he] may have decided to go to trial with that information."

Trial counsel also testified that he did not have any information about a lawsuit against Officer Laronde pertaining to planting narcotics on people and that, if he had, he would have used that information at the motions hearing and possibly at trial. Counsel also testified that he did not consider moving to compel the disclosure of Officer Laronde's IAD records because he "assumed that if there was additional exculpatory information, they would have sent it along with what they believed to be exculpatory at the time."

On cross-examination, the State questioned trial counsel about the prevailing process at the time of Mr. Blake's suppression hearing for transferring disclosures and personnel records. The State specifically asked if trial counsel was aware that "at the point of the trial that the [Supreme Court of Maryland] had just issued a very detailed opinion relating [to] the disclosure of confidential Internal Affairs records" in *Fields & Colkley v. State*, 432 Md. 650 (2013),[13] in which this Court outlined the procedure for obtaining

---

[13] In *Fields & Colkley v. State*, this Court clarified the process for defendants seeking access to confidential records, like the IAD files at issue here. 432 Md. 650 (2013). The Court held that "a defendant in a criminal case who, for purposes of confronting an adverse witness, seeks discovery of otherwise confidential information about that witness has the initial burden to demonstrate a 'need to inspect,' that is, demonstrate 'a reasonable possibility that review of the records would result in discovery of usable evidence.'" *Id.* at 667 (quoting *Zaal v. State*, 326 Md. 54, 81 (1992)). This Court went on to explain that "[t]he sufficiency of the need to inspect depends upon factors such as '[t]he nature of the charges brought against the defendant,' '[t]he issue before the court,' and the 'relationship . . . between the charges, the information sought, and the likelihood that relevant information will be obtained as a result of reviewing the records.'" *Id.* (quoting *Zaal*, 326 Md. at 81–82).

16

confidential personnel records.  Trial counsel stated that he may not have been aware of the *Fields* decision at the time of the motions hearing.[14]  The State attempted to show that, because trial counsel had personal knowledge of misconduct by Officer Laronde at the time of the trial and the State had disclosed the civil judgment against Officer Laronde, trial counsel had enough information to show a need to inspect Officer Laronde's personnel files pursuant to *Fields*.

Mr. Blake's post-conviction counsel argued that Mr. Blake's defense was prejudiced because if the State had disclosed the IAD files, then Mr. Blake would not have agreed to enter a plea of not guilty upon the agreed statement of facts.  Mr. Blake testified at the post-conviction hearing but said only that he asked trial counsel to file a motion to modify on his behalf.  Notably, Mr. Blake did not say that he would have rejected the State's plea offer and gone to trial had he known about Officer Laronde's IAD files.  Nor did he claim that Officer Laronde's testimony at the suppression hearing was false.  Additionally, Mr. Blake did not claim that the facts proffered by the State in support of the not-guilty statement of facts were inaccurate.

---

Once a defendant has established a need to inspect, the court may elect to review the material alone, conduct review in the presence of counsel, or permit review by counsel alone.  *Id.*  In *Fields*, this Court held that the motions court erred by reviewing only the summary of the files at issue instead of the files in their entirety, and by failing to consider giving counsel *in camera* access to the files.  *Id.* at 669.  Although it is within a court's discretion to deny a defendant access to confidential material, the court should only deny access "if nothing in it, 'in anyone's imagination, [could] properly be used in defense or lead to the discovery of usable evidence.'"  *Id.* at 670 (quoting *Zaal*, 326 Md. at 88).

[14] The *Fields* decision was filed on July 9, 2013.  Mr. Blake's suppression hearing occurred on October 16, 2013.

17

## 2. The Post-Conviction Court's Ruling

The post-conviction court issued a written order and accompanying opinion on October 27, 2020, granting Mr. Blake a belated motion for modification of sentence and denying all other relief. The court ruled that Mr. Blake's trial counsel had not rendered ineffective assistance by failing to move to compel production of Officer Laronde's IAD files. Concerning Mr. Blake's claims that "trial counsel failed to fully investigate, or demand the disclosure of, information potentially relevant to the impeachment of Laronde[,]" the post-conviction court found that the allegations were deficient because they did not overcome the presumption that trial counsel's actions or omissions were the product of a reasonable trial strategy. Moreover, the post-conviction court found that Mr. Blake "failed to show that, even if trial counsel was deficient in preparation, that this deficiency had an adverse effect on the defense."

With respect to the claim that the State violated Mr. Blake's due process rights by failing to disclose information allegedly relevant to Officer Laronde's credibility, the post-conviction court relied upon *United States v. Ruiz*, 536 U.S. 622 (2002), in which the Supreme Court held that a defendant's entitlement to disclosure of exculpatory and impeachment information under *Brady v. Maryland* and its progeny is a "trial-related right[]." The post-conviction court determined that Mr. Blake's not guilty plea upon an agreed statement of facts was the functional equivalent of a guilty plea and, therefore, Mr. Blake "waiv[ed] any potential trial-related right to the information." The post-conviction court ruled that, under *Ruiz*, Mr. Blake had no right to impeachment information prior to his entry of his plea.

18

Thereafter, Mr. Blake noted a timely appeal. After the parties submitted briefs, the Appellate Court filed a certification pursuant to Maryland Rule 8-304, requesting that this Court answer the certified questions as set forth above. This Court issued a writ of *certiorari* to the Appellate Court, and pursuant to Rule 8-304(c)(3), accepted the entire action.

## III

## Discussion

### A. *Standard of Review*

This Court reviews a post-conviction court's findings regarding ineffective assistance of counsel as a mixed question of law and fact. *McGhee v. State*, 482 Md. 48, 66 (2022); *State v. Syed*, 463 Md. 60, 73 (2019), *reconsideration denied* (Apr. 19, 2019), *cert. denied*, *Syed v. Maryland*, 140 S. Ct. 562 (2019); *see also Harris v. State*, 303 Md. 685, 698 (1985). The factual findings of the post-conviction court are reviewed for clear error, and the legal conclusions are reviewed *de novo*. *Podieh v. State*, 470 Md. 272, 289 (2020). The reviewing court exercises its "own independent analysis" as to the reasonableness, and prejudice therein, of counsel's conduct. *Oken v. State*, 343 Md. 256, 284–85 (1996).

Suppression of exculpatory evidence by the prosecution is a constitutional claim, and, therefore, this Court reviews claims of *Brady* violations *de novo*. *Canales-Yanez v. State*, 472 Md. 132, 156–57 (2021) (citing *Ware v. State*, 348 Md. 19, 48 (1997)).

### B. The Ineffective Assistance of Counsel Claim

Criminal defendants are guaranteed the right to counsel under the Sixth Amendment to the United States Constitution[15] and Article 21 of the Maryland Declaration of Rights.[16] The right to counsel means "the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test to determine when counsel's actions violate a defendant's constitutional right to effective assistance of counsel. As this Court has noted, "a heavy burden of proof rests upon the defendant to prove both deficient performance and prejudice[.]" *State v. Tichnell*, 306 Md. 428, 442 (1986) (citing *Harris*, 303 Md. at 697). "[A]n appellate court reviewing an ineffectiveness of counsel claim must make an independent constitutional appraisal from the entire record." *Tichnell*, 306 Md. at 442 (citing *Harris*, 303 Md. at 697). To succeed on a *Strickland* ineffective assistance of counsel claim, the defendant must show: (1) trial counsel's performance fell below prevailing professional norms; and (2) trial counsel's deficient performance prejudiced the

---

[15] The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." That right is applicable to the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 343–44 (1963).

[16] Article 21 of the Maryland Declaration of Rights declares:

That in all criminal prosecutions, every man hath a right to be informed of the accusation against him; to have a copy of the Indictment, or charge, in due time (if required) to prepare for his defence; to be allowed counsel; to be confronted with the witnesses against him; to have process for his witnesses; to examine the witnesses for and against him on oath; and to a speedy trial by an impartial jury, without whose unanimous consent he ought not to be found guilty.

defense. *Harris*, 303 Md. at 695–96. A counsel's errors must be "'so serious as to deprive the defendant of a fair trial[.]'" *Id.* at 699 (quoting *Strickland*, 466 U.S. at 687).

### 1. The Performance Prong

"[T]he defendant bears the burden of showing 'that counsel's performance was deficient.'" *Podieh*, 470 Md. at 290 (quoting *Strickland*, 466 U.S. at 687). "To prevail on the 'performance' prong, the defendant must demonstrate 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" *Id.* (quoting *Strickland*, 466 U.S. at 687). Counsel's performance is deficient "when 'the facts of the particular case, viewed as of the time of counsel's conduct,' reveal that counsel's acts or omissions fell 'outside the wide range of professionally competent assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 690).

*Strickland* makes clear that "the object of an ineffectiveness claim is not to grade counsel's performance[][.]" *Harris*, 303 Md. at 701 (citing *Strickland*, 466 U.S. at 697). In scrutinizing counsel's performance, a reviewing court "must reconstruct the circumstances of [counsel's] alleged conduct and evaluate that conduct from [counsel's] perspective at that time, eliminating all of the distorting effects of hindsight." *Tichnell*, 306 Md. at 444. As the Supreme Court cautioned in *Strickland*, "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689. In assessing the reasonableness of counsel's performance, this Court determines whether trial counsel's decision was "within the wide range of reasonable professional

21

assistance[.]" *Id.* at 689. In other words, a court must engage in an "inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citing *Strickland*, 466 U.S. at 688). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (cleaned up).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Harris*, 303 Md. at 699 (footnote omitted). "This Court has required that a defendant, when alleging that counsel's performance was deficient, 'must also show that counsel's actions were not the result of trial strategy.'" *Syed*, 463 Md. at 75 (quoting *Coleman v. State*, 434 Md. 320, 338 (2013)). "A strategic trial decision is one that 'is founded upon adequate investigation and preparation.'" *Id.* (quoting *State v. Borchardt*, 396 Md. 586, 604 (2007)).

## 2. The Prejudice Prong

Even if a defendant satisfies the performance prong of *Strickland's* two-prong test, the defendant must show that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. The "prejudice" component is satisfied upon a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "We have interpreted *reasonable probability* to mean 'there was a substantial or significant possibility that the verdict of the trier of fact would have been affected.'" *Syed*, 463 Md. at 86–87 (quoting

22

*Bowers v. State*, 320 Md. 416, 426 (1990)).  Stated another way, "[t]he likelihood of a different result must be substantial, not just conceivable."  *Harrington*, 562 U.S. at 112.

When undertaking a prejudice analysis, a reviewing court "must consider the totality of the evidence before the judge or jury."  *Strickland*, 466 U.S. at 695.  "[E]ven if a court has found that an attorney's performance was deficient, the court does not presume the defendant suffered prejudice as a result of the deficient performance."  *Syed*, 463 Md. at 87 (citing *Weaver v. Massachusetts*, 582 U.S. 286, 299–300 (2017) ("The prejudice showing is in most cases a necessary part of a *Strickland* claim.  The reason is that a defendant has a right to effective representation, not a right to an attorney who performs his duties 'mistake-free.'")).

## C.      *Mr. Blake Failed to Prove Either Prong of Strickland*

Based upon our independent review of the record, we conclude that Mr. Blake has failed to meet his heavy burden of demonstrating either the deficient performance prong or the prejudice prong necessary to establish an ineffective assistance of counsel claim, and therefore is not entitled to post-conviction relief on this claim.

### 1. *Mr. Blake's Counsel's Performance was Not Deficient*

Mr. Blake claims that a reasonable attorney would have moved to compel the production of Officer Laronde's IAD files prior to the motion to suppress in order to use the contents of the files to attack Officer Laronde's credibility.  Mr. Blake asserts that trial counsel knew that Officer Laronde had a "propensity for misconduct," and counsel was therefore on notice that the IAD files might contain exculpatory information.  Mr. Blake argues that his trial counsel did not make a strategic decision not to seek Officer Laronde's

23

files because he did not even consider moving to compel production of the information. Trial counsel testified that he assumed the State would have informed him of additional exculpatory information. Mr. Blake argues that the *Strickland* presumption that counsel acts reasonably was rebutted by counsel's testimony at the post-conviction hearing, and that the post-conviction court erred in finding counsel's performance was not deficient.

The State argues that Mr. Blake failed to show his counsel's performance was deficient because it did not fall below an objective standard of reasonableness. The State contends that trial counsel had heard allegations of Officer Laronde conducting inappropriate strip searches and, nevertheless, made the strategic decision to challenge the legality of the search as the basis for trial counsel's motion to suppress. The State asserts that it was reasonable for defense counsel to assume that the State would have called Officer Critzer—the officer standing approximately six feet away—to confirm Officer Laronde's description of the search in the event trial counsel attempted to discredit Officer Laronde's testimony with impeachment evidence. The State also points out that Mr. Blake never alleged that Officer Laronde's statement of the facts was untruthful—only that the search as described was illegal under the application of the Supreme Court's *Bell* factors, and this Court's decision in *Paulino v. State*. Because this was a legitimate trial strategy, the State argues that trial counsel's performance was not deficient when he decided not to move to compel production of Officer Laronde's IAD files, or when he advised Mr. Blake to proceed by way of a not guilty plea upon an agreed statement of facts after the motion to suppress was denied.

24

Based upon our independent review of the record, we agree with the State and the post-conviction court that Mr. Blake failed to overcome the presumption that his trial attorney's decision not to move to compel production of Officer Laronde's IAD files was reasonable trial strategy. The record in this case is clear that trial counsel's trial strategy was not to cast doubt on Officer Laronde's description of the search, but to argue that the events *as described* constituted an unreasonable search in violation of the Fourth Amendment, and that the search of Mr. Blake's person, as described by Officer Laronde, was similar to the strip search that this Court found to be unreasonable in *Paulino v. State.*

At the suppression hearing, Officer Laronde testified that he suspected that Mr. Blake was hiding drugs under his testicles. When Officer Laronde conducted a search incident to Mr. Blake's arrest, Officer Laronde pulled Mr. Blake's pants away from his body and "look[ed] to see if [he] could see a bag protruding from beneath [Mr. Blake's] testicles." When Officer Laronde could not see anything, he asked Mr. Blake to squat, at which time a "large plastic bag fell into his underwear."

On cross-examination, defense counsel did not challenge Officer Laronde's description of the search, and Mr. Blake did not testify to an alternative version of events, even after being advised that he could testify at the hearing and that it would not be used against him at trial. Trial counsel made a strategic choice to challenge the legality of the search as described rather than challenge Officer Laronde's account of the search.[17]

---

[17] We disagree with Mr. Blake's characterization of his trial counsel's testimony as his having knowledge of Officer Laronde's "propensity for misconduct." Trial counsel stated at the post-conviction hearing that, at the time of Mr. Blake's case, he had "heard allegations of Officer Laronde's inappropriate strip searching of civilians on the street[.]"

Moreover, even if trial counsel had been successful in discrediting Officer Laronde, the record reflects that there were two officers involved in Mr. Blake's detention and arrest. Officer Laronde testified that Officer Critzer was standing approximately six feet away when he searched Mr. Blake. In other words, even if defense counsel was successful in discrediting Officer Laronde, it was reasonable for defense counsel to consider that the State would have called Officer Critzer to corroborate Officer Laronde's conduct, and that this consideration would have informed defense counsel's strategic decision.

We similarly determine that it was not deficient performance to advise Mr. Blake to proceed by way of a not guilty plea on an agreed statement of facts after the motion to suppress was denied. Trial counsel testified at the post-conviction hearing that he advised Mr. Blake to proceed in that manner in order to preserve his right to appeal the denial of the motion to suppress. He did not advise Mr. Blake to go to trial because he "didn't believe that [Mr. Blake] had a chance to win, given the ruling on the motion to suppress." We conclude that trial counsel's advice and strategy under the circumstances was reasonable.

Based upon our independent appraisal of the record, we hold that Mr. Blake has failed to prove that trial counsel's failure to move to compel production of Officer Laronde's IAD files fell below an objective standard of reasonableness and that his performance was, therefore, deficient. It is clear from this record that trial counsel's strategy was to argue that what Officer Laronde described was an illegal strip search under

Consistent with what trial counsel had heard, the legality of the search was the basis for trial counsel's motion to suppress.

26

this Court's decision in *Paulino*. There is nothing in the record to suggest that Officer Laronde's version of events was untruthful. Mr. Blake did not testify at the suppression hearing, and at the post-conviction hearing, he testified only that he asked counsel to file a motion to modify his sentence. Mr. Blake has never alleged that the statement of facts proffered by the State was not accurate. Given the State's evidence in this case, trial counsel's strategic decision to focus on the legality of the search and, after losing on the motion to suppress, to advise Mr. Blake to plead not guilty with an agreed statement of facts offered by the State was not deficient performance.

### 2. *Mr. Blake Failed to Satisfy the Prejudice Prong*

Even though we have determined that Mr. Blake failed to satisfy the deficient performance prong of *Strickland*, we address the prejudice prong. Mr. Blake contends that he was prejudiced by his trial counsel's failure to move to compel production of Officer Laronde's IAD files. Mr. Blake contends that the information contained in the IAD files was admissible as impeachment evidence under Maryland Rule 5-608(b).[18] Mr. Blake contends that if his trial counsel had confronted Officer Laronde with the contents of the IAD files, it would have been sufficient to create a reasonable probability that the factfinder

---

[18] Maryland Rule 5-608(b) provides:

> The court may permit any witness to be examined regarding the witness's own prior conduct that did not result in a conviction but that the court finds probative of a character trait of untruthfulness. Upon objection, however, the court may permit the inquiry only if the questioner, outside the hearing of the jury, establishes a reasonable factual basis for asserting that the conduct of the witness occurred. The conduct may not be proved by extrinsic evidence.

27

would not accept Officer Laronde's testimony as credible. Mr. Blake argues that the records of these complaints would have destroyed Officer Laronde's credibility and shown a pattern of conducting illegal strip searches. According to Mr. Blake, attacking the credibility of Officer Laronde as the sole witness at the suppression hearing would have changed the outcome of the proceeding, and, therefore, Mr. Blake was prejudiced by his counsel's ineffective assistance.

The State argues that, even if Mr. Blake can show that trial counsel's performance was deficient, Mr. Blake failed to show prejudice from counsel's failure to move to compel production of the IAD files. The State asserts that many of the complaints would not have been permissible impeachment evidence under Maryland Rule 5-608(b) because they were either unfounded, not sustained, or administratively closed due to a lack of complainant contact. The State also points out that, at the time of Mr. Blake's suppression hearing, Section 3-110(b) of the Public Safety Article of the Maryland Code ("PS") (2010) precluded the admission of a complaint that was determined to be unfounded or unsustained. Furthermore, according to the State, the two neglect of duty findings would not have been permissible for use as impeachment evidence because these findings do not speak to Officer Laronde's truthfulness. The State points out that the civil judgment against Officer Laronde for false imprisonment—involving the same allegations that were the substance of one of the complaints in an IAD file—was disclosed to Mr. Blake and was the subject of the State's successful motion *in limine* that was not challenged by Mr. Blake on appeal. Concerning the Final Report issued in connection with the January 2013 non-fatal shooting in which Officer Laronde was a witness, the State notes that there is no

evidence in the record that, in October 2013, the State was aware that it had in its possession video surveillance footage that contradicted Officer Laronde's witness statement contained in the report.

The State also asserts that, assuming the files contained any impeachment evidence, it is not clear what facts trial counsel would have challenged. The State argues that Mr. Blake's trial counsel only disputed the legality of the search, not the facts of Officer Laronde's testimony. The State notes that Mr. Blake never testified at the suppression hearing or at the post-conviction hearing that the strip search or the recovery of drugs occurred contrary to the agreed statement of facts gleaned from Officer Laronde's testimony. The State contends that it is reasonable to conclude that, had Mr. Blake's counsel cross-examined Officer Laronde using impeachment evidence from the IAD files, the State would have called Officer Critzer to provide testimony that supported Officer Laronde's testimony. In light of these circumstances, the State argues that the impeachment evidence would not have changed the outcome of the proceedings, and, therefore, Mr. Blake failed to prove that he was prejudiced by trial counsel's decision not to move to compel disclosure of the IAD files.

For the reasons set forth below, we conclude that Mr. Blake has failed to establish that, if his counsel had successfully moved to compel the disclosure of Officer Laronde's IAD files, there is a reasonable probability that the result would have been different.

As described above, Mr. Blake cites nine IAD files and the Final Report containing Officer Laronde's witness statement pertaining to the 2013 shooting. Our analysis of these complaints are as follows. First, we observe that two of the nine complaints resulted in

29

findings of "not sustained" or "unfounded." At the time of Mr. Blake's suppression hearing, PS § 3-110 precluded the admission of evidence of a complaint that was determined to be unfounded or unsustained. PS § 3-110 (2010).[19] Accordingly, the two findings resulting in not sustained or unfounded would not have been admissible as impeachment evidence. Second, assuming that PS § 3-110 had not precluded the admissibility of such complaints, we determine that neither the "not sustained" nor unfounded complaints would have been admissible under Maryland Rule 5-608 because the defense would not have been able to establish a reasonable factual basis for asserting that the conduct alleged in the complaints occurred.

Third, we observe that five of the nine complaints resulted in the files being administratively closed because there was no follow-up contact by the complainants. Although Mr. Blake is correct that the rule permits evidence of bad acts that do not result in a criminal conviction to be used for impeachment, the proponent must offer a "reasonable factual basis" for asserting that the conduct occurred. Md. Rule 5-608. "'[M]ere accusations of crime or misconduct may not be used to impeach[.]'" *Fields*, 432 Md. at 673 (quoting *State v. Cox*, 298 Md. 173, 179 (1983)). This is because "'[a] hearsay accusation of guilt has little logical relevance to the witness' credibility.'" *Id.* at 674 (quoting *Cox*, 298 Md. at 181). The administratively closed IAD files, by definition, contain no more than the complainant's hearsay accusations. They do not contain a

---

[19] The provision preventing the admission of unfounded or unsustained complaints was repealed in 2021. *See* Ch. 59, 2021 Md. Laws.

reasonable factual basis to believe that the alleged conduct occurred and, therefore, they would not have been available for use in cross-examination.

Fourth, with respect to the two neglect of duty findings that were sustained, these findings do not speak to Officer Laronde's truthfulness, and, therefore, would not likely have been admissible as impeachment evidence. *See* Maryland Rule 5-608(b) (stating that a court may allow examination of prior conduct that the court finds "probative of a character trait of untruthfulness"); *see, e.g.*, *Pantazes v. State*, 376 Md. 661, 687–88 (2003) (evidence of a witness's alleged participation in a robbery was properly excluded since it would not have been probative of the witness's character trait for untruthfulness).

We turn next to the May 2008 complaint alleging assault and planting of evidence. The IAD file was closed after no complainant contact. Although the IAD file was closed, the complainant filed a lawsuit against Officer Laronde and others in the United States District Court for the District of Maryland in February 2011. As the record reflects, the State disclosed in discovery the civil judgment against Officer Laronde for false imprisonment. Mr. Blake's trial counsel had notice of the civil judgment at the time of the suppression hearing, which arose from the same conduct described in Officer Laronde's IAD file on this complaint. At the conclusion of the suppression hearing, the motions court considered the State's motion *in limine* to preclude trial counsel from "asking Officer Laronde any questions" about the civil judgment entered against him for false imprisonment. Defense counsel objected, arguing that the false imprisonment judgment was "an issue of credibility." The court granted the State's motion over trial counsel's objection, and this issue was not raised by Mr. Blake on appeal. Under these

31

circumstances, we determine that, even assuming that Mr. Blake's counsel was deficient in failing to move to compel production of the IAD file for this incident, it would not have changed the result.

This brings us to the Department's Final Report of the January 2013 non-fatal police shooting, which includes a description of the agency's interview with Officer Laronde, who was a witness to the incident. As discussed above, in addition to the Final Report, Mr. Blake introduced a 2016 newspaper article, which reported that the victim's defense attorney had obtained video surveillance of the shooting that contradicted Officer Laronde's statement about the incident and records reflecting that a lawsuit concerning the shooting had settled in 2017 for $400,000. There is no evidence in the record that the State had the surveillance video in its possession at the time of Mr. Blake's suppression hearing in October 2013 or that it was in possession of any other evidence in 2013 that would cause the State to question the accuracy of Officer Laronde's witness statement as contained in the Final Report.

We further determine that, if we assume that trial counsel moved to compel the disclosure of the above-described IAD files, and we further assume that the motions court had permitted defense counsel's attempt to impeach Officer Laronde's testimony using any of the above-described complaints, Mr. Blake cannot establish, based upon this impeachment evidence alone, that there is a reasonable probability that the result would have been different. As previously discussed, defense counsel's trial strategy was to challenge the legality of the search, not to dispute Officer Laronde's description of the search. Mr. Blake has failed to show how impeaching Officer Laronde would have

32

presented a different version of events. Even if trial counsel had successfully moved to compel the disclosure of these records and was permitted to use them to cross-examine Officer Laronde, there is no reason to believe that Officer Critzer would not have corroborated Officer Laronde's version of the events. Mr. Blake never testified at the post-conviction hearing that the strip search or the recovery of drugs from his person happened contrary to the agreed statement of facts or Officer Laronde's testimony. Based upon our independent appraisal of the record, Mr. Blake has failed to prove that he was prejudiced by his counsel's decision not to seek production of Officer Laronde's IAD files.

### D. The Brady Claim

Finally, we briefly address whether the post-conviction court erred by ruling that the State had not violated its *Brady* obligations by failing to disclose impeachment evidence regarding Officer Laronde. "*Brady v. Maryland* and its progeny guarantee to a criminal defendant who stands trial the right to receive material exculpatory and impeachment evidence in the possession of the State." *Byrd v. State*, 471 Md. 359, 372 (2020) (citing *Brady*, 373 U.S. at 83; *Giglio v. United States*, 405 U.S. 150, 92 (1972)). In *United States v. Ruiz*, the Supreme Court held that the right to impeachment evidence under *Brady* is a trial right and is accordingly waived along with the other constitutional guarantees that a defendant forgoes when waiving the right to trial. 536 U.S. 622 (2002). In *Byrd v. State*, 471 Md. 359, 384–85 (2020), this Court held that the right to impeachment information under *Brady* was relinquished by the defendant when he entered a guilty plea and waived his right to trial. In this case, Mr. Blake asserts that he had a constitutional right to *Brady* impeachment evidence because he did not plead guilty. Mr. Blake argues that the

33

procedural circumstances in which he pled not guilty upon an agreed statement of facts sets this case apart from *Ruiz* and *Byrd* and argues that *Brady* material is required to be disclosed prior to a suppression hearing.[20]

The State argues that the disclosure of impeachment evidence is a trial right that does not apply to other proceedings such as suppression hearings and therefore, Mr. Blake's *Brady* claim must fail.[21]

To establish a *Brady* violation, the petitioner must establish that the undisclosed evidence: (1) would have been favorable to the defense at trial; (2) was suppressed or withheld; and (3) was material. *Yearby v. State*, 414 Md. 708, 717 (2010). With respect

_____

[20] To support his contention, Mr. Blake cites to cases from other jurisdictions in which courts have held that *Brady* and its progeny apply to pre-trial suppression hearings. *See, e.g.*, *Biles v. United States*, 101 A.3d 1012, 1019 (D.C. 2014) (holding that *Brady* applies to pre-trial suppression motions); *United States v. Gamez-Orduño*, 235 F.3d 453, 461 (9th Cir. 2000) (holding that *Brady* applies to pre-trial motions to suppress where there is a reasonable probability that the result of the proceeding would have been different had the evidence been disclosed); *Smith v. Black*, 904 F.2d 950, 965–66 (5th Cir. 1990) (assessing whether nondisclosure affected the outcome of the suppression hearing); *Nuckols v. Gibson*, 233 F.3d 1261, 1266–67 (10th Cir. 2000) (finding that *Brady* obligations apply to pre-trial hearings).

[21] The State argues that *Ruiz* and *Byrd* clearly establish that impeachment evidence is a trial right. Because Mr. Blake did not have a trial, the State argues that he was not entitled to disclosure of the IAD records. The State asserts that, aside from *Biles*, the cases relied upon by Mr. Blake that are described in note 20 were decided prior to the Supreme Court's decision in *Ruiz*. Additionally, the State argues that *Biles* is not analogous or persuasive because that case involved evidence related to the defendant's search and arrest, unlike the impeachment evidence at issue here. The State also points out that other jurisdictions have expressed doubt over the applicability of *Brady* to pre-trial suppression hearings post-*Ruiz*. *See United States v. Harmon*, 871 F. Supp. 2d 1125, 1151 (D. N.M. 2012); *Martin v. United States*, No. 2:18-CR-00124-JDL, 2021 WL 4846877, at *4 n.3 (D. Me. Oct 18, 2021); *Carrero v. Metzger*, No. CV 15-600-LPS, 2018 WL 4567124, at *9 (D. Del. Sept. 24, 2018).

to the materiality component necessary to establish a *Brady* violation, the defendant must establish that there was "a reasonable probability" that disclosure of the suppressed evidence would have led to a different result. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). As we noted in *Yearby*, the Supreme Court has explained that the "reasonable probability" standard for proving prejudice under *Strickland* and materiality under *Brady* are the same. 414 Md. at 718 & n.6 (comparing the materiality standard described in *Kyles*, 514 U.S. at 434, with the prejudice standard described in *Strickland*, 466 U.S. at 694).

We affirm the post-conviction court's ruling denying Mr. Blake's post-conviction relief pertaining to his *Brady* violation claim, but for different reasons. It is "this Court's well-established policy to decide constitutional issues only when necessary[.]" *Robinson v. State*, 404 Md. 208, 217 (2008) (citing *Burch v. United Cable Television of Balt. Ltd. P'ship*, 391 Md. 687, 695 (2006); *McCarter v. State*, 363 Md. 705, 712 (2001)). "Even if a constitutional issue is properly raised and decided at the trial level, this Court will not reach the constitutional issue if it is unnecessary to do so." *Id.* (citing *Burch*, 391 Md. at 695). In keeping with this practice, we determine that it is unnecessary to decide in this case whether the State's duty to disclose *Brady* impeachment evidence applies to pre-trial proceedings like the suppression hearing here.

For purposes of the instant case, and given that we apply the same analysis for evaluating the prejudice prong under *Strickland* and the materiality standard under *Brady*, we assume, without deciding, that the State's duty to provide impeachment evidence applies at a suppression hearing. We determine that Mr. Blake failed to satisfy the materiality standard to establish a *Brady* violation for the same reason that he failed to

satisfy the prejudice prong under *Strickland* as described in part III.B.2. of this opinion. We conclude there was no reasonable possibility that the results of the proceeding would have been different had trial counsel had access to the IAD files. The admissibility of suppressed evidence bears on materiality, and given the totality of the circumstances, the evidence of misconduct allegations against Officer Laronde did not create a reasonable probability that the suppression motion would have been granted.

## IV

## Conclusion

We hold that Mr. Blake failed to prove that his trial counsel rendered ineffective assistance by failing to move to compel the disclosure of Officer Laronde's IAD files. We determine that Mr. Blake failed to meet his burden of demonstrating that his trial counsel's failure to move to compel production of Officer Laronde's IAD files fell below an objective standard of reasonableness and that his performance was therefore deficient. Even if Mr. Blake had established that his trial counsel's performance was deficient, he failed to demonstrate that the failure to move to compel the disclosure of the files prejudiced him. In other words, assuming trial counsel erred in failing to move to compel the disclosure of the IAD files, Mr. Blake failed to show that there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different.

Given that the same legal standard applies to the prejudice prong when analyzing an ineffective assistance claim under *Strickland* and the materiality standard necessary to establish a *Brady* violation, we assume, without deciding, that the State was required to disclose impeachment evidence prior to the suppression hearing, and we determine that

36

Mr. Blake failed to establish the *Brady* materiality standard for the same reasons that he failed to establish prejudice under *Strickland.* We affirm the judgment of the circuit court.

**CERTIFIED QUESTIONS ANSWERED; JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY IS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**